OPINION
{¶ 1} Harco Industries, Inc. ("Harco") appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Elco Textron, Inc. ("Textron") on Harco's claims for breach of contract and unjust enrichment.
 {¶ 2} Textron supplied certain "banjo" bolts to Delphi Automotive Systems ("Delphi") for the assembly of brake components. Suppliers are required to submit to certain quality control measures when they enter into a contract with Delphi. Delphi has the right to implement containment procedures under its contract with suppliers when defects in the quality of parts are discovered. The containment procedures include Level I Controlled Shipping, which requires an additional inspection process to be enacted at the supplier's manufacturing facility, and Level II Controlled Shipping, which includes the same processes as Level I Controlled Shipping along with an additional inspection process that is completed by a third party. Generally, the Level II inspection is required to be performed outside the supplier's facilities. The contract also requires the supplier to bear the cost of any required inspections.
 {¶ 3} Harco assembled brake components for Delphi, which included the use of Textron's banjo bolts. Problems with the bolts were discovered and, when Level I Controlled Shipping did not alleviate the problem, Textron was placed on Level II Controlled Shipping in July 2000. Textron hired QIS, a company from an approved list provided by Delphi, to perform Level II inspections. However, Noreen Campbell from Delphi apparently asked Harco to perform Level II compliance work on the parts provided by Textron to minimize down time. Harco did perform the inspections, allegedly with Campbell's assurances that Harco would get paid. When Harco billed Textron in September, October, November, and December for the work it had performed, Textron refused to pay. Textron claims that it had been unaware of the work Harco had been doing and that it had not received any explanation from Harco or Delphi when it questioned the invoices. Textron refused to pay Harco.
 {¶ 4} Harco filed a complaint against Textron on September 6, 2001, in which it sought damages in the amount of $198,968.76 for its inspection of Textron's banjo bolts. Harco claimed that Textron had breached a contract formed by its agent, Delphi employee Noreen Campbell, and had been unjustly enriched at Harco's expense. Delphi was not a party to the suit. Textron answered and filed a motion for summary judgment. The trial court granted Textron's motion for summary judgment. Specifically, the court found that the record was "devoid of anything that would imply that Noreen Campbell was an agent" of Textron and that Textron had had no knowledge of the benefit conferred by Harco.
 {¶ 5} Harco raises three assignments of error on appeal, which we will address together.
 {¶ 6} "I. The trial court improperly disregarded the standard for granting summary judgment when it granted appellee Elco Textron Inc.'s motion for summary judgment on both claims asserted by appellant Harco Industries, Inc. against appellee Elco Textron, Inc.
 {¶ 7} "2. The trial court improperly granted summary judgment in favor of appellee Elco Textron, Inc. despite the existence of genuine issues of material fact regarding the agency relationship between Noreen Campbell and appellee Elco Textron, Inc. and the resulting oral contract between appellee Elco Textron, Inc. and appellant Harco Industries, Inc.
 {¶ 8} "3. The trial court improperly granted summary judgment in favor of appellee Elco Textron, Inc. despite the existence of genuine issues of material fact regarding appellee Elco Textron, Inc.'s unjust enrichment at the expense of appellant Harco Industries, Inc."
 {¶ 9} Harco challenges the trial court's decision with respect to both its breach of contract and unjust enrichment claims. Regarding the breach of contract issue, Harco claims that genuine issues of material fact remained regarding whether Noreen Campbell had acted as Textron's agent and had entered a binding contract with Harco on Textron's behalf. Thus, Harco asserts that the trial court acted improperly in resolving these issues summarily.
 {¶ 10} The record does not support Harco's claim that genuine issues of material fact existed as to whether Campbell had acted as Textron's agent and had entered into a contract with Harco on Textron's behalf. The documentary evidence offered in support of the motion for summary judgment shows that Campbell herself was wholly unaware of such a role. It is clear from her deposition that she did not believe that she had been acting on Textron's behalf or had had any role in a contractual relationship between Textron and Harco. For example, Campbell testified that she had not known the agreed upon price for the work Harco performed because Delphi suppliers and companies that are hired for containment work are expected to negotiate those terms themselves. Campbell had no detailed recollection of talks with Textron about who would do the containment work when the problems with the banjo bolts surfaced and did not remember how she had learned that Harco would do the containment work. At best, the evidence showed that Campbell, acting in her capacity with Delphi, had arranged for Harco to inspect the banjo bolts.
 {¶ 11} Harco presented evidence that Campbell had promised to "get them paid," but this evidence did not create a genuine issue of material fact as to whether she had acted as an agent for Textron because it did not address who would make the payment. Also, Harco's reliance on Delphi's Supplier Guidelines as creating a genuine issue of material fact that Campbell had entered into a contract on Textron's behalf was misplaced. While the Supplier Guidelines do, in some circumstances, require suppliers to pay for the completion of an inspection by a third party, they do not serve to create contracts between suppliers and those who do remedial inspections. Similarly, language relied upon by Harco that inspections are "the financial responsibility of the supplier" did not create a genuine issue of material fact that Delphi, i.e., Campbell, was authorized to enter into a contract on Textron's behalf.
 {¶ 12} Because there was no issue as to agency, we need not consider the argument that Campbell had entered into an oral contract with Harco on Textron's behalf.
 {¶ 13} The trial court properly granted summary judgment on Harco's breach of contract claim.
 {¶ 14} The documentary evidence with respect to the unjust enrichment claim is not as clear cut. The elements of unjust enrichment include: 1) a benefit conferred by a plaintiff upon a defendant; 2) knowledge by the defendant of the benefit; and 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. Hubbard v. Dillingham, Butler App. No. CA2002-02-045, 2003-Ohio-1443, ¶ 25, citing Hambleton v. R.G. BarryCorp. (1984), 12 Ohio St.3d 179, 183. The trial court found that Textron had no specific knowledge that a benefit was being provided by Harco.
 {¶ 15} It is undisputed that Textron received invoices from Harco over several months for the inspections that Harco was performing. Thus, there was a genuine issue of material fact as to whether Textron knew of the work that Harco was performing and acquiesced in it. Also, it appears that Textron's initial response to its Level II Controlled Shipping notification did not demonstrate full compliance with what Delphi required under those circumstances. The reply indicated that Textron had contracted with QIS to inspect for two of the three problems that were being encountered with the bolts but that it would continue to inspect for the third problem in house. Delphi's Supplier Guidelines required outside inspection for all three problems, and Ron Brewer stated that he informed Textron of this fact after receiving its reply. As such, there was a genuine issue of material fact as to whether Textron benefitted from Harco's inspections. In other words, the inspections proposed by Textron were, according to Brewer, inadequate for Delphi without the Harco inspections. Moreover, even if it is true, as Textron claims, that it had informed Delphi that the work by Harco had not been authorized, such communication does not necessarily equate with a denial that Harco was conferring a benefit upon Textron. The evidence, construed most favorably to Harco, presented genuine issues of material fact as to whether Harco was conferring a benefit upon Textron by performing a quality check of the banjo bolts that Textron itself was not properly performing and that Textron knew of this benefit. If these issues are resolved in Harco's favor, it would seem to follow that Textron is unjustly enriched if it refuses to compensate Harco. Summary judgment on the claim of unjust enrichment was improper.
 {¶ 16} The assignments of error are sustained in part and overruled in part.
 {¶ 17} The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings on Harco's unjust enrichment claim.
BROGAN, J. and YOUNG, J., concur.